FILED

Jun 28 2019, 8:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Jason A. Scheele
Ashley M. Gilbert-Johnson
Rothberg Logan & Warsco LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Richard W. Morgan
Jerome W. McKeever
Pfeifer Morgan & Stesiak
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anonymous Doctor A, Anonymous Hospital B, and Anonymous Medical Facility C, *Appellants-Defendants,* <br><br> v. <br><br> Carol Foreman, *Appellee-Plaintiff* | June 28, 2019 <br><br> Court of Appeals Case No. 18A-CT-2785 <br><br> Appeal from the Fulton Circuit Court <br><br> The Honorable Christopher Lee, Judge <br><br> Trial Court Cause No. 25C01-1801-CT-41 |

**May, Judge.**

[1]     Anonymous Doctor A, Anonymous Hospital B, and Anonymous Medical Facility C (hereinafter "Medical Providers") appeal the trial court's denial of their motion for preliminary determination and summary judgment. Medical Providers argue the trial court erred in denying summary judgment because Carol Foreman filed suit outside the timeframe allowed by the statute of

limitations. We reverse and remand with instructions for the trial court to enter summary judgment in favor of Medical Providers.

# Facts and Procedural History

On November 25, 2015, Anonymous Doctor A surgically repaired Foreman's hip fracture at Anonymous Hospital B. In the course of surgery, Anonymous Doctor A inserted a femoral rod into Foreman's femur. Post-surgery, Foreman returned for follow-up visits, and Anonymous Doctor A ordered x-rays of Foreman's femur. The x-rays did not show any fracture of the femoral rod. However, on January 22, 2016, Foreman felt a sudden pain in her groin area and was unable to walk. She went to Anonymous Hospital B for an x-ray that revealed the femoral rod had fractured. On January 23, 2016, surgeons in Indianapolis performed revision surgery on Foreman.

Foreman continued to see Doctor A after the revision surgery until May 2016. She initially believed the femoral rod manufacturer was at fault for the rod's failure, and she sent a claim to the manufacturer seeking compensation for the hardware failure and revision surgery. However, on September 8, 2016, the manufacturer denied her claim.

On January 19, 2018, Foreman filed her proposed complaint with the Indiana Department of Insurance and her complaint for damages in the Fulton Circuit Court asserting Doctor A negligently placed the femoral rod during surgery, which resulted in the rod's fracture. On May 18, 2018, Medical Providers filed

a motion for preliminary determination and summary judgment arguing Foreman's claims were barred by the statute of limitations. The trial court held a hearing on Medical Providers' motion on August 24, 2018, and issued an order denying the motion on September 18, 2018. The trial court certified its order denying summary judgment for interlocutory appeal, and we accepted jurisdiction.

## Discussion and Decision

When reviewing the grant or denial of a motion for summary judgment, we apply the same standard as the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 973 (Ind. 2005). We grant summary judgment "only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law." *Id*. Further, we construe all evidence in favor of the nonmoving party and resolve all doubts as to the existence of a material issue of fact against the moving party. *Id.* While the moving party must put forth evidence to support the motion, "the opposing party may not rest on his pleadings, but must set forth specific facts, using supporting materials contemplated by Trial Rule 56, which demonstrate that summary judgment is not appropriate." *Conrad v. Waugh*, 474 N.E.2d 130, 134 (Ind. Ct. App. 1985).

[6] Consequently, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Cole v. Gohmann*, 727 N.E.2d 1111, 1113 (Ind. Ct. App. 2000). However, if the moving party establishes that an action was filed outside the statute of limitations, then "the burden shifts to the nonmovant to establish an issue of fact material to a theory that avoids the defense." *Boggs v. Tri-State Radiology, Inc.*, 730 N.E.2d 692, 695 (Ind. 2000).

## Statute of Limitations

[7] The statute of limitations governing medical malpractice actions centers on the date the alleged malpractice occurred. It states a "claim, whether in contract or tort, may not be brought against a health care provider upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect." Ind. Code § 34-18-7-1. Thus, a patient's time to file suit begins on the date of the occurrence of the alleged malpractice. *Palmer v. Gorecki*, 844 N.E.2d 149, 154 (Ind. Ct. App. 2006). Foreman alleges Doctor A negligently inserted her femoral rod on November 25, 2015. Thus, she had until November 25, 2017, to file suit. As Foreman did not file suit until January 19, 2018, she failed to file suit within that timeframe.

[8] Nevertheless, there are circumstances in which a patient may not have sufficient facts to discover that malpractice occurred within two years. Therefore, our Indiana Supreme Court has laid out a methodology for determining whether a claim is barred by the statute of limitations.

Initially, a court must determine the date the alleged malpractice occurred and determine the discovery date—the date when the claimant discovered the alleged malpractice and resulting injury, or possessed enough information that would have led a reasonably diligent person to make such discovery. If the discovery date is more than two years beyond the date the malpractice occurred, the claimant has two years after discovery within which to initiate a malpractice action. But if the discovery date is within two years following the occurrence of the alleged malpractice, the statutory limitation period applies and the action must be initiated before the period expires, unless it is not reasonably possible for the claimant to present the claim in the time remaining after discovery and before the end of the statutory period.

*Booth v. Wiley*, 839 N.E.2d 1168, 1172 (Ind. 2005). The date when a plaintiff learns of malpractice and resulting injury, or in the exercise of reasonable diligence should have recognized malpractice, is the "trigger date." *Anonymous Physician v. Kendra*, 114 N.E.3d 545, 550 (Ind. Ct. App. 2018) (holding complaint filed in 2015 was barred by the statute of limitations when decedent had a number of heart procedures prior to his death and died in 2012), *trans. denied*. "A plaintiff does not need to be told malpractice occurred to trigger the statute of limitations." *Brinkman v. Bueter*, 879 N.E.2d 549, 555 (Ind. 2008).

[9] The occurrence date of Foreman's injury is November 25, 2015, because that is the day Doctor A is alleged to have negligently implanted the femoral rod. Foreman reasonably should have suspected negligence on January 22, 2016, when her femoral rod fractured, because femoral rods are not supposed to fracture. In fact, Foreman suspected the manufacturer of the femoral rod was

negligent and sent a letter to the manufacturer. The manufacturer wrote back in September 2016 denying liability, and Foreman apparently took no additional action until filing the instant complaint on January 19, 2018.

[10] Foreman states in her affidavit that she "never had reason to believe that [she] had a claim for medical malpractice until [her] attorneys filed a medical malpractice complaint on January 19, 2018." (App. Vol. II at 49.) This conclusory statement does not create a genuine issue of material fact. Someone must suspect malpractice in order to draft a complaint alleging malpractice. Foreman fails to put forth any evidence about what prompted her to file suit. If the failure of the femoral rod prompted Foreman to suspect malpractice, then she discovered the potential malpractice twenty-two months before the limitation period expired. If the letter from the manufacturer prompted Foreman to suspect malpractice, then she discovered it fourteen months before the limitations period expired. Either way, Foreman learned of the suit sufficiently in advance of the limitations expiration date to file suit within two years of the occurrence date. We have held that discovering potential malpractice ten or eleven months before expiration of the statute of limitations and failing to file suit is unreasonable. *See Boggs*, 730 N.E.2d at 697-98 (holding plaintiff had reasonable time to file suit prior to expiration of statute of limitations when plaintiff had eleven months before the limitation period ended); *Jeffrey v. Methodist Hosp.*, 956 N.E.2d 151, 160 (Ind. Ct. App. 2011) (holding plaintiffs' failure to file their action within ten months of learning of potential malpractice was not reasonably diligent); *Williams v. Adelsperger*, 918

N.E.2d 440, 448 (Ind. Ct. App. 2009) (holding plaintiff's failure to file action within eleven months of learning of potential malpractice was not reasonably diligent). Therefore, we conclude Foreman knew about or reasonably should have known about the alleged malpractice sufficiently in advance of expiration of the statute of limitations for her to file suit, but she failed to do so.

## Continuing Wrong Doctrine

Foreman's claim cannot be saved by the continuing wrong doctrine. The continuing wrong doctrine "applies where an entire course of conduct combines to produce an injury." *Gradus-Pizlo v. Acton*, 964 N.E.2d 865, 871 (Ind. Ct. App. 2012). If the doctrine applies, the statutory limitations period does not begin to run until the end of the course of conduct resulting in injury. *Id*. "In order to apply the doctrine, the plaintiff must demonstrate that the alleged injury-producing conduct was of a continuous nature." *Id*.

Foreman asserts that her claim is timely because she continued to see Doctor A until May 2016. However, the alleged wrong, misplacement of a femoral rod during surgery, is an isolated event, not conduct of a continuing nature. Doctor A monitored Foreman before and after the revision surgery, but Foreman does not put forth any facts to show Doctor A's conduct after inserting the femoral rod amounts to malpractice. *See Anonymous Physician v. Rogers*, 20 N.E.3d 192, 200 (Ind. Ct. App. 2014) (holding continuing wrong doctrine did not apply when malpractice complaint alleged doctor used chemical to which patient was allergic and complaint was filed more than two years after doctor stopped using

the chemical, even though patient continued to see doctor after he stopped using the chemical), *trans. denied*.

## Fraudulent Concealment

[13] Nor has Foreman demonstrated Medical Providers fraudulently concealed facts preventing her from discovering the potential malpractice. Fraudulent concealment is an equitable doctrine that tolls the statute of limitations when the defendant "has prevented a plaintiff from discovering an otherwise valid claim, by violation of duty or deception." *Garneau v. Bush*, 838 N.E.2d 1134, 1142 (Ind. Ct. App. 2005), *trans. denied*. Fraudulent concealment may be active or passive. *Id*. Passive fraudulent concealment "arises when the physician does not disclose to the patient certain material information." *Id*. at 1142-43. Passive concealment tolls the beginning of the statute of limitations period until "the time the patient-physician relationship ends or, as in the active concealment case, until discovery, whichever is earlier." *GYN-OB Consultants, L.L.C. v. Schopp*, 780 N.E.2d 1206, 1210 (Ind. Ct. App. 2003) (internal citation omitted), *trans. denied*. "Active concealment involves affirmative acts of concealment intended to mislead or hinder the plaintiff from obtaining information concerning the malpractice. When active concealment is involved, the statute does not expire until a reasonable time after the patient discovers the malpractice or with reasonable diligence could have discovered the malpractice." *Id*. (internal citation omitted). Therefore, "the critical event for purposes of determining whether an action was timely filed is the plaintiff's

discovery of facts that should have alerted them that they have a cause of action." *Garneau*, 838 N.E.2d at 1143.

[14] Foreman asserts Doctor A fraudulently concealed facts that would have led her to realize she had a potential claim when he told her he had "no idea" why the femoral rod failed. (Appellee Br. 22.) However, she did not designate evidence to demonstrate Doctor A actively concealed the reason for the femoral rod failure. Nor did she designate evidence to demonstrate Doctor A's statement that he had "no idea" why the rod failed was inaccurate or intended to mislead. Nor is there evidence Doctor A failed to disclose material information to Foreman. She knew who performed her surgery. The doctors accurately informed her of the results of post-operative x-rays, and Foreman knew when the rod fractured. Thus, Foreman has not demonstrated that the doctrine of fraudulent concealment saves her claim. *See Johnson v. Sullivan*, 952 N.E.2d 787, 792 (Ind. Ct. App. 2011) (holding fraudulent concealment doctrine did not apply as to provide patient's estate a reasonable time beyond expiration of the two-year limitations period to file medical malpractice complaint), *trans. denied*.

# Conclusion

[15] Foreman had ample time to file suit within two years of the date of the alleged malpractice, but she failed to do so, and her claim cannot be saved by the continuing wrong doctrine or fraudulent concealment. Accordingly, we must reverse the trial court and remand with instructions for the trial court to enter summary judgment on behalf of Medical Providers.

Reversed and remanded.

Mathias, J., and Brown, J., concur.